UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VC MANAGEMENT, LLC, | ) | |
| | ) | No. 14 CV 1385 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Young B. Kim |
| | ) | |
| RELIASTAR LIFE INSURANCE COMPANY, | ) ) ) | |
| | ) | April 20, 2015 |
| Defendant. | ) | |

**MEMORANDUM OPINION and ORDER**

Plaintiff VC Management, LLC ("VCM") is suing Defendant ReliaStar Life Insurance Company ("ReliaStar") for breach of contract and is seeking $3 million in life insurance proceeds plus interest. (R. 1-2, Compl. at 5.) During written discovery, ReliaStar withheld 23 emails[1] as responsive documents to a request on the basis that they are protected under the attorney-client privilege. VCM moves to compel the production of these emails. (R. 52, Pl.'s Mot.) For the following reasons, the motion is denied:

**Background**

On December 15, 2010, VCM (then doing business as Vestor Capital Partners LLC) purchased and ReliaStar issued a life insurance policy insuring the life of one of its officers ("Insured") with a death benefit of $5 million. (R. 1-2, Compl. at 2-3.)

---

[1] During the pendency of VCM's motion, ReliaStar identified three additional emails over which it claims privilege but which were inadvertently omitted from its privilege log. These three emails are within the original date range of ReliaStar's previous privilege log.

On November 27, 2012, VCM submitted a written request to reduce the death benefit amount from $5 million to $2 million. (R. 1-2, Compl. at 3.) The following month, on December 16, 2012, the Insured passed away. (Id.)

VCM alleges, among other theories, that because as of December 16, 2012, "no officer of ReliaStar" executed any amendment, endorsement, or other documents effectuating the reduction, the death benefit remained at $5 million when the Insured passed away. ReliaStar takes the opposing view that the reduction became effective prior to December 16, 2012. As such, the resolution of this matter comes down to the issue whether the reduction of the death benefit from $5 million to $2 million became effective prior to the Insured's death.

On February 6, 2015, VCM deposed ReliaStar pursuant to Federal Rule of Civil Procedure 30(b)(6), and ReliaStar produced Cheryl Kusick as its designee. (R. 60, Def.'s Resp. at 2-3.) Prior to the deposition and during written discovery, ReliaStar withheld 23 emails that had been exchanged between Kusick and ReliaStar's in-house counsel, asserting the attorney-client privilege and describing these emails in a privilege log. (See R. 52-3, Pl.'s Mot. Ex. A, Privilege Log.) VCM questioned Kusick about ReliaStar's signature policies and about these subject emails. Soon after the Rule 30(b)(6) deposition, VCM moved to compel the production of the withheld emails, arguing that they do not constitute attorney-client communications because they reflect only business advice and not legal advice and that even if they were privileged communications, Kusick's deposition

testimony resulted in a waiver of the privilege. This court conducted an *in camera* review of the subject emails. (R. 61, March 24, 2015 Ord.)

**Analysis**

ReliaStar maintains that VCM is not entitled to discover the subject emails because they are privileged attorney-client communications. Pursuant to Federal Rule of Evidence 501, "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Because this action is a diversity action arising out of a contractual dispute in which Illinois law supplies the rules of decision, the court must apply Illinois law to determine whether the attorney-client privilege applies to the subject emails. *See* Fed. R. Evid. 501; *Allendale Mut. Ins. Co. v. Bull Data Sys.*, 152 F.R.D. 132, 139 (N.D. Ill. 1993). Under Illinois law, "[w]here legal advice of any kind is sought from a lawyer in his or her capacity as a lawyer, the communications relating to that purpose, made in confidence by the client, are protected from disclosure by the client or lawyer, unless the protection is waived." *Center Partners, Ltd. v. Growth Head GP*, 2012 IL 113107, ¶ 30 (citing *Fischel & Kahn, Ltd. v. van Straaten Gallery*, 727 N.E.2d 240, 243 (Ill. 2000)). But "Illinois [also] adheres 'to a strong policy of encouraging disclosure, with an eye toward ascertaining that truth which is essential to the proper disposition of a lawsuit.'" *Center Partners,* 2012 IL 113107, ¶ 32 (quoting *Waste Mgmt., Inc. v. Int'l Surplus Lines Ins. Co.*, 579 N.E.2d 322, 327 (Ill. 1991)).

Having examined the subject emails *in camera*, the court is satisfied that they constitute privileged communications seeking and rendering legal advice.

Accordingly, these emails are protected by the attorney-client privilege. *See Dexia Credit Local v. Rogan*, 231 F.R.D. 268, 272 (N.D. Ill. 2004) (applying Illinois law). Therefore, the court focuses its attention on the question whether ReliaStar waived its privilege.

**A.     Subject Matter Waiver**

Despite the important public policy goals served by the attorney-client privilege, there are myriad ways in which the privilege can be waived. As a general rule, "the attorney-client privilege is considered waived by the client when the client voluntarily testifies to the privileged matter." *Center Partners,* 2012 IL 113107, ¶ 35. Both Illinois courts and federal courts place the burden to establish privilege on the party asserting its existence. *Compare United States v. Nat'l Assoc. of Realtors*, 242 F.R.D. 491, 494 (N.D. Ill. 2007) ("The burden of showing that the privilege was not waived . . . is on the party asserting the privilege.") *with Cox v. Yellow Cab Co.*, 337 N.E.2d 15, 17 (Ill. 1975) ("One who claims to be exempt by reason of privilege from the general rule which compels all persons to disclose the truth has the burden of showing the facts which give rise to the privilege.").

VCM first argues that Kusick's deposition testimony amounted to a subject matter waiver of the attorney-client privilege. Reflecting the principle that disclosure is inconsistent with privilege, client testimony about the privileged contents of a communication falls within the ambit of the doctrine of subject matter waiver. *Center Partners,* 2012 IL 113107, ¶ 37. In its application of this doctrine, "Illinois has long recognized . . . that when a client voluntarily testifies and waives

4

the privilege, such waiver 'extends no further than the subject matter concerning which testimony had been given by the client.'" *Id.* at ¶ 38 (quoting *People v. Gerold*, 107 N.E. 165, 178 (Ill. 1914) (emphasis omitted)). By extending a client's waiver to an entire subject, the doctrine of subject matter waiver serves the important purpose of "prevent[ing] partial or selective disclosure of favorable material while sequestering the unfavorable." *Center Partners*, 2012 IL 113107, ¶ 39. "[W]hen a party's conduct reaches a certain point of disclosure fairness requires that the privilege should cease whether the party intended that result or not." *Id.* at ¶ 40 (quoting *Sylgab Steel & Wire Corp. v. Imoco-Gateway Corp.*, 62 F.R.D. 454, 457 (N.D. Ill. 1974)).

In analyzing the subject matter waiver issue, the court must first determine whether Kusick disclosed any privileged information during her deposition testimony. VCM identifies the following passages as evidence that Kusick waived the attorney-client privilege:

> **Q.** Okay. In connection with your anticipated testimony relating to the reason why ReliaStar required a signature stamp on certain forms, are you going to rely upon any information that was communicated to you in any of [the emails for which ReliaStar claims privilege]?
>
> **A.** I – it's part – the communication in those emails are part of what I know about our business practices in regards to the endorsing of service forms.

(R. 52-10, Pl.'s Mot. Ex. H, Kusick Dep. at 52:22-53:4.)

> **Q.** And you cannot identify any person affiliated with ING or ReliaStar who provided you information about this subject matter other than the information you received from in-house counsel?
>
> **Ms. Doolin**: Objection –

5

**By Mr. Friedman**

Q. Is that true?

**Ms. Doolin**: I'm sorry, objection to form, asked and answered, mischaracterizes the witness's prior testimony.

**The Witness**: I, in my course of being employed for – for –with ReliaStar or its affiliates, I cannot – I've not seeked [sic] a specific form or asked. But I am – I do think that just as general administrative historical practices, I have become aware that our life insurance policies are stamped with an officer signature and our service forms are. And my working assumption is that because these are contractual documents.

(Id. at 71:13-72:6.) According to VCM, this exchange demonstrates that Kusick waived any privilege attaching to ReliaStar's discussions about signature policies with its attorneys. ReliaStar defends its privilege and asserts that there has been no subject matter waiver because "*none* of [Kusick's] testimony revealed any privileged communications." (R. 60, Def.'s Br. at 12.)

The court agrees with ReliaStar that Kusick did not disclose any privileged information. Also, the indicia of selective disclosure are not apparent in the deposition excerpts VCM cites. To the contrary, the passages show that Kusick relies on her work experience as a separate source of knowledge on the subject topic. Other exchanges in the portion of Kusick's deposition submitted to the court (and not highlighted by VCM) similarly describe Kusick's knowledge as primarily grounded in her experience rather than her communications with an in-house counsel:

> Q. And what is the source of your knowledge as to the reason that ReliaStar required an officer signature on the – on the policy service request?
>
> A. From my experience in administering life insurance policies and in discussions with our in-house legal counsel.
> …
>
> Q. I understand you have some experience and your view on why this requirement was placed on the processors. I understand that. But in connection with –with information that I would call corporate information, information that was provided to you by any person affiliated with ReliaStar, is it your testimony that the only source of information of that sort is the information you obtained from ReliaStar's counsel?
>
> **Ms. Doolin:** Objection; form, mischaracterizes the witness's testimony.
>
> A. I used to process forms for an affiliate of ING. And at the time, I learned the process that we endorsed certain forms.

(Id. at 69:18-70.)

VCM claims that because Kusick "relied heavily on these privileged E-mails" during her deposition testimony, they are discoverable. (R. 62, Pl.'s Reply at 4-5 ("It follows that when a Rule 30(b)(6) witness testifies on behalf of a corporation based upon information obtained from another corporate source (even an otherwise privileged source), that the adverse party is entitled to discovery of the source material.").) VCM argues that Kusick "did not and could not deactivate the portion of her brain containing information related to the officer signature requirement[.]" (R. 62, Pl.'s Reply at 3.) By VCM's reckoning, clients would initiate subject matter waivers each and every time they recalled information, privileged or not, that was discussed in a privileged communication with an attorney, even if other sources supplied the exact same knowledge. VCM does not supply any authority for this

7

principle, and its bare assertion is unpersuasive. Kusick has not revealed any privileged information, and certainly has not done so in such a way that would give ReliaStar any unfair advantage in this litigation. The analysis on this issue might be different if Kusick's exclusive source of knowledge about the signature policies at ReliaStar were the privileged emails and if she had testified about the content of those emails. But because Kusick testified based on her work experience and without disclosing the substance of the privileged emails, there was no subject matter waiver.

**B.    At-Issue Waiver**

VCM also argues that there has been an "at-issue" waiver vitiating the attorney-client privilege. Under Illinois law, if the holder of the attorney-client privilege puts the contents of privileged communications "at issue" in litigation, the privilege is lost. *Shapo v. Tires 'N Tracks, Inc.*, 782 N.E.2d 813, 819 (Ill. App. Ct. 2002). But here, VCM fails to explain how the doctrine of at-issue waiver applies to the current dispute and fails to develop its "at issue" waiver argument. "[A]ny arguments that are unsupported or underdeveloped are deemed waived." *System Dev. Integration, LLC v. Computer Scis. Corp.*, 739 F. Supp. 2d 1063, 1083 (N.D. Ill. 2010) (citations omitted). Ordinarily, the doctrine of at-issue waiver is implicated in disputes between a client and an attorney, especially in scenarios involving claims of legal malpractice or the nonpayment of attorney fees. *See id.* (citing *In re Marriage of Bielawski*, 764 N.E.2d 1254, 1263 (Ill. App. Ct. 2002)). In its opposition to VCM's motion, ReliaStar argues that the mere questioning of a Rule 30(b)(6)

designee about the contents of documents listed on a privilege log does not implicate the doctrine of at-issue waiver. The court agrees.

**C. Privilege Log**

Finally, VCM argues that because, in its opinion, ReliaStar's privilege log "is wholly deficient, the claim of privilege with respect to each of the 23 documents in such log should be overruled." (R. 52, Pl.'s Mot. ¶ 41.) Rule 26(b)(5) provides that when a party claims privilege to withhold information that otherwise is discoverable, it is required to "describe the nature of the documents, communications, or tangible things not produced or disclosed — and do so in a matter that, without revealing information itself privileged or protected, will enable other parties to assess the claim." A minimum level of specificity is required to allow the court "to determine whether the discovery opponent has discharged its burden of establishing the requirements expounded upon in the foregoing discussion." *Allendale Mut. Ins. Co. v. Bull Data Sys.*, 145 F.R.D. 84, 88 (N.D. Ill. 1992).

In its accounting of privileged documents, ReliaStar catalogued the date, time, document type, sender (with job title), recipient(s) (with job title), subject matter of the communication (usually some variant of "request for legal advice"), and type of privilege claimed. (See R. 52-3, Pl.'s Mot. Ex. A, Privilege Log.) VCM takes issues with ReliaStar's privilege log and argues that it is so vague that it fails the requirements of Rule 26(b)(5). (R. 52, Pl.'s Mot. ¶ 36.) In response, ReliaStar points out that "at no time during either [of the two conversations between counsel

for VCM and ReliaStar] did counsel for [VCM] raise any issue about the adequacy of the privilege log[.]" (R. 60-6, Def.'s Br., Ex. F, Doolin Aff. at ¶ 9.) VCM in its reply does not dispute ReliaStar's claim that the specificity of the privilege log was never discussed during the parties' attempts to resolve their differences. Notably, VCM did not raise the inadequacy of the privilege log until after the close of written discovery and only after Kusick's deposition. Because Local Rule 37.2 requires that prior to filing a discovery motion, the parties are required to certify that they made good faith attempts to resolve their differences and because VCM failed to do so, its argument fails. To be clear, the court conducted an *in camera* review of the withheld emails to address VCM's suspicion that the withheld communications were about seeking and rendering business advice, not because the court found the privilege log lacking in specificity.

## Conclusion

For the foregoing reasons, VCM's motion to compel is denied.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**