UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VC MANAGEMENT, LLC, | ) |
| Plaintiff, | ) |
| | ) 14 C 1385 |
| v. | ) |
| | ) Judge George M. Marovich |
| RELIASTAR LIFE INSURANCE COMPANY, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff filed this suit seeking additional proceeds under a life insurance policy.[1] Toward the close of discovery, when plaintiff concluded that defendant was unfairly changing its defense strategy, plaintiff filed a motion to bar defendant from changing its defense to plaintiff's claim. For the reasons set forth below, the Court denies plaintiff's motion.

**I.      Background**

After the December 16, 2012 death of Brian Baker, defendant ReliaStar Life Insurance Company ("ReliaStar") paid $2,000,000.00 to plaintiff VC Management LLC ("VCM"), which was the beneficiary of a policy on the life of its employee, Brian Baker. VCM filed this suit, because it believes ReliaStar should have paid it $5,000,000.00, i.e., $3,000,000.00 more than it actually paid. The parties agree that the original face value of the policy was $5,000,000.00. The parties also agree that *before* Brian Baker's death, VCM asked ReliaStar to reduce the face value

---

[1] The Court has diversity jurisdiction over this case. Plaintiff VC Management LLC has three members–William P. McNulty, Martin Buehler and Dennis J. Slott–each of whom is a citizen of Illinois. (See Docket Entry 25, Defendant's Second Amended Notice of Removal). Defendant ReliaStar Life Insurance Company is a Minnesota corporation with its principal place of business in Minnesota. (See Docket Entry 25, Defendant's Second Amended Notice of Removal). The amount in controversy is greater than $75,000.00.

of the policy at issue in this case to $2,000,000.00. The parties disagree, however, on whether the change was actually effectuated before Brian Baker's death.

After Reliastar paid $2,000,000.00 (but not $5,000,000.00) to VCM, VCM filed in the Circuit Court of Cook County a claim for breach of contract. Reliastar removed the case here. In its complaint, VCM alleged:

> 11. On or about November 27, 2012, the Owner of the Policy submitted a Request for Policy Service . . . to ReliaStar requesting an amendment to the Policy to decrease the face amount of the Policy from $5,000,000 to $2,000,000. . . .
>
> 12. As of December 16, 2012, ReliaStar had not accepted the request for amendment of the Policy as set forth in the Service Request and had not issued any written amendment or endorsement to the Policy reducing the Stated Death Benefit from $5,000,000 to $2,000,000.
>
> 13. As of December 16, 2012, no officer of ReliaStar had signed any amendment, endorsement or other documents changing the Stated Death Benefit under the Policy from $5,000,000 to $2,000,000.
>
> 14. On December 18, 2012, two days after the death of the Insured, ReliaStar issued an endorsement to the Policy . . . purporting to amend the terms of the Policy by reducing the Stated Death Benefit to $2,000,000. . . .
>
> 15. The policy change requested in the Service Request never became effective because it was not accepted by ReliaStar until December 18, 2012, two days after the death of the Insured.

(VCM Complaint at ¶¶ 11-15).

On March 5, 2014, ReliaStar filed an answer and affirmative defenses. As its first affirmative defense, ReliaStar alleged:

> 1. On December 17, 2010, ReliaStar issued life insurance policy AD20348111 (the "Policy") insuring the life of Brian C. Baker as the Insured, with a Policy Date of December 15, 2010. The original owner of the policy was Vestor Capital Partners LLC ("Vestor"). The original Stated Death Benefit, or face amount, of the Policy was $5 million. Brian C. Baker was the President and CIO of Vestor.

2. In October of 2012, Vestor contacted ReliaStar to transfer ownership of the Policy from Vestor to VC Management, LLC ("VCM" or the Plaintiff), change the beneficiary of the Policy to VCM, and reduce the face amount of the Policy.

3. On information and belief, VCM was the successor to Vestor, and Brian C. Baker was the president of VCM.

4. At the same time, Vestor requested similar changes to other ReliaStar life insurance policies owned by Vestor and insuring the lives of other Vestor personnel. On information and belief, all of these changes were requested in part to reduce the premium obligation of Vestor and VCM.

5. On or about October 16, 2012, ReliaStar sent Policy Service Request forms to Vestor, along with a term rate projection of face decrease for the Policy.

6. On October 23, 2012, ReliaStar sent a face decrease quote to Vestor, reflecting the new premium amounts which would be applicable to the face decreases requested by Vestor and advising that 'if you wish to decrease the face amount of the policy, the attached Policy Service Request Form can be completed" and either mailed or faxed to ReliaStar.

7. ReliaStar and Vestor/VCM also agreed that the effective date of the face amount decrease would be December 15, 2012, which date corresponded with the monthly Policy anniversary date.

8. On or about November 27, 2012, Vestor faxed to ReliaStar the completed Request for Policy Service form confirming the face decrease of the Policy to $2 million. That same day, Vestor also submitted a Transfer of Ownership form transferring ownership of the Policy from Vestor to VCM and changing the beneficiary of the policy to VCM.

9. On December 11, 2012, William McNulty[,] Vestor and VCM's treasurer, contacted ReliaStar customer service by phone, on behalf of Vestor and VCM. During that conversation, ReliaStar verified the requirements needed for the ownership change and verified the face decrease and beneficiary change.

10. On December 15, 2012, ReliaStar processed the face decrease of the Policy from $5 million to $2 million.

11. On December 16, 2012, the Insured under the Policy, Brian C. Baker, died.

12. On December 17, 2012, William McNulty contacted ReliaStar customer service by phone to inquire about the status of the Policy. ReliaStar confirmed that it was processing the transfer of ownership request and that the face decrease request had been completed. ReliaStar also provided the annual and monthly premium amounts now due on the Policy as a result of the face decrease. During that call, Mr. McNulty did not advise ReliaStar that the Insured had died.

(Reliastar's Answer and Affirmative Defenses at 7-9).

After ReliaStar filed its answer, the parties proceeded to discovery. VCM propounded its first set of interrogatories, and, on June 27, 2014, ReliaStar served its answers to VCM's first set of interrogatories. In interrogatory no. 2 of the first set of interrogatories, VCM asked and ReliaStar answered as follows:

> 2. State the date on which ReliaStar approved or accepted the Change Request. In answering this Interrogatory No. 2:
>
>   (a) Identify the employee of ReliaStar who authorized the acceptance or approval of the Change request, including such person's job title.
>
>   *   *   *
>
>   (d) State the facts which support ReliaStar's answer to this Interrogatory No. 2.
>
> ANSWER: [Objections omitted.] Notwithstanding said objection, and without waiving same, ReliaStar states as follows:
>
>   (a) Heather Phelps reviewed, approved, accepted and processed the Request for Policy Service (hereinafter the "Request") seeking a face decrease of Policy No. AD20348111 insuring the life of Brian Baker (the "Policy") on December 3, 2012, to be effective on December 15, 2012.
>
>   *   *   *
>   (d) Vestor Capital Partners LLC ("Vestor") submitted the Request to ReliaStar, which received the Request on November 27, 2012, to decrease the face amount of the Policy from $5 million to $2 million. *Vestor submitted this Request after multiple communications and discussions with ReliaStar concerning Vestor's wish to decrease the face amount of the Policy*, and other policies, the premium that would be payable as a result of the decrease, and the fact that the

effective date of the decrease would be December 15, 2012, the monthiversary date of the Policy.

In accordance with her duties as a Complex Changes Coordinator on behalf of ReliaStar, Heather Phelps received and reviewed the Request for Policy Service on December 3, 2012 and confirmed that the Request was in good order. This process included confirming that the policy was eligible for a face amount decrease. Ms. Phelps then approved the Request by submitting it to ReliaStar's administrative system on December 3, 2012, with the effective date of December 15, 2012. Once Ms. Phelps approved the Request by submitting it to ReliaStar's administrative system, it automatically went into effect on December 15, 2012.

Ms. Phelps was at work on December 15, 2012, and therefore on that date initiated the additional processes ReliaStar follows for confirming that the face decrease was effective to the Policyholder. This included sending the Policy Service Request From to ReliaStar for internal endorsement and preparing the letter confirming the face decrease and its effective date to the Policyholder. Because December 15, 2012 was not a business day, but was a Saturday, this paperwork was completed and mailed on Ms. Phelps' next day in the office, which was December 18, 2012. The Request, however, had been approved and processed in ReliaStar's administrative system on December 3, 2012 and effective on December 15, 2012.

(Defendant's Answers to Plaintiff's First Set of Interrogatories at 3-5, Docket entry 57-3) (emphasis added).

Plaintiff also propounded requests to admit. Specifically, VCM requested that ReliaStar admit that "[b]y submitting the Request for Policy Service, Vestor was requesting a change to a term or condition of the Policy." On March 5, 2015, ReliaStar responded:

ReliaStar denies that Vestor's submission of the Request for Policy Service was the start of its request to change the face amount of the Policy. ReliaStar admits that by submitting the Request for Policy Service Form to ReliaStar on November 27, 2010, Vestor was completing the process it began when it contacted ReliaStar by phone in October of 2012 to request a face decrease for the Policy, admits that Vestor sent the Policy Service Request Form in acceptance of ReliaStar's offer to decrease the face amount of the Policy in accordance with its procedures and Heather Phelps' email of October 23, 2012 regarding how to complete a face decrease of the Policy, and admits that a request to decrease the face amount of the Policy was a request to change a term of the Policy.

(Defendant's Responses to Plaintiff's Requests to Admit at 3; Docket entry 57-5). In addition, VCM propounded a third set of interrogatories in which it asked ReliaStar to explain the "detailed basis" of any denial of VCM's requests to admit. With respect to the denial described above, ReliaStar responded:

> With respect to the Policy Service Request Form submitted on the Brian Baker Policy by Vestor, Vestor's representative, John Baker called the company prior to submitting the form to request a face decrease, and was told in writing via email by Heather Phelps on October 23, 2012, acting on behalf of ReliaStar, "if you wish to decrease the face amount of the policy, the attached Policy Service Request Form can be completed and either mailed . . . or faxed . . . . Please remember to include the Policy Number on all correspondence." Accordingly, Vestor had already requested the face decrease, which ReliaStar had preapproved and then offered to Vestor by ReliaStar via Heather Phelps' emailing the Request for Policy Service Form to Vestor's representative, John Baker. When Vestor submitted the Policy Service Request Form to ReliaStar on November 27, 2012, it accepted ReliaStar's offer.

(Defendant's Response to Plaintiff's Third Set of Interrogatories at 2; Docket entry 57-8).

## II. Discussion

VCM argues that ReliaStar changed its defense, and VCM seeks to bar Reliastar's "new" defense based on the mend-the-hold doctrine. The mend-the-hold doctrine is a common-law doctrine that "limits the right of a party to a contract suit to change his litigation position," i.e., to get a better hold on his opponent. *Harbor Ins. Co. v. Continental Bank Corp.*, 922 F.2d 357, 362 (7th Cir. 1990). It is, in essence, "a corollary of the duty of good faith that the law of Illinois . . . imposes on parties to contracts" in that a "party who hokes up a phony defense to the performance of his contractual duties and then when that defense fails (at some expense to the other party) tries on another defense for size can properly be said to be acting in bad faith." *Harbor Ins.*, 922 F.2d at 363. Courts will not invoke the mend-the-hold doctrine to bar defenses unless the other party has suffered prejudice. *Ryerson Inc. v. Federal Ins. Co.*, 676 F.3d 610, 614

(7th Cir. 2012) ("When there is no prejudice to the opposing party, invoking the doctrine of mend the hold to bar a valid defense is overkill.").

In *Harbor Ins.*, the plaintiff insurance company sought a declaration that it had no duty to defend or indemnify its insureds, who had been accused of securities fraud. In its complaint, the insurer alleged that the insureds had engaged in fraudulent conduct so egregious that it would violate federal and state law for the insurer to defend or indemnify the insureds. After the suit was filed, the insureds settled the underlying securities fraud cases. The insureds filed counterclaims asserting that they should be reimbursed for the amount they paid to settle the underlying cases. The plaintiff insurance company then changed tack and argued, as the Seventh Circuit described it, that the insureds "had settled the cases prematurely; the directors had been guilty of no misconduct at all!" *Harbor Ins.*, 922 F.2d at 359-60. On appeal, the Seventh Circuit concluded that defendant should have been allowed to argue to the jury that plaintiff improperly tried to mend its hold. *Harbor Ins.*, 922 F.2d at 365. It said:

> In a new trial the issue should be presented to the jury in an instruction that tells it that the insurance companies were not allowed to change the defense to liability presented in their original pleading unless the change was based on new information that could not have been obtained at the time of that pleading or on other changed circumstances to which the companies could properly respond without being deemed to violate their duty of dealing in good faith with their contractual partner.

*Harbor Ins.*, 922 F.2d at 365.

It is obvious to this Court from the Seventh Circuit's discussion in *Harbor Ins.* that a decision to bar a defense based on the mend-the-hold doctrine is a decision on the merits. This motion is not adequately presented as a motion on the merits, because VCM has not filed a motion for summary judgment on this issue. Thus, the parties have not had an orderly chance to

show whether the material facts are disputed and whether VCM is entitled to judgment as a matter of law on the issue. That is reason enough to deny the motion, but there is more. As will be discussed below, the pleadings establish that VCM has suffered no prejudice.

VCM argues that ReliaStar's original defense to this suit was that Heather Phelps had the authority to review and approve VCM's Request for Policy Service and that she did so on December 3, 2012. VCM bases its argument on ReliaStar's June 27, 2012 responses to VCM's first set of interrogatories. In those interrogatories, VCM asked ReliaStar to "[s]tate the date on which ReliaStar approved or accepted the Change Request." In response, ReliaStar said Heather Phelps approved and accepted it on December 3, 2012, effective December 15, 2012. ReliaStar went on to say Vestor had submitted the Request "after multiple communications and discussions with ReliaStar concerning Vestor's wish to decrease the face amount of the Policy, and other policies, the premium that would be payable as a result of the decrease, and the fact that the effective date of the decrease would be December 15, 2012, the monthiversary date of the Policy."

VCM further argues that ReliaStar changed to a "completely different and inconsistent" defense on March 5, 2015, when it responded to VCM's requests to admit and third set of interrogatories. At that point, ReliaStar stated in answer to an interrogatory:

> Vestor's representative, John Baker called the company prior to submitting the form to request a face decrease, and was told in writing via email by Heather Phelps on October 23, 2012, acting on behalf of ReliaStar, "if you wish to decrease the face amount of the policy, the attached Policy Service Request Form can be completed and either mailed . . . or faxed . . .. Please remember to include the Policy Number on all correspondence." Accordingly, Vestor had already requested the face decrease, which ReliaStar had preapproved and then offered to Vestor by ReliaStar via Heather Phelps' emailing the Request for Policy Service Form to Vestor's representative, John Baker. When Vestor submitted the Policy

Service Request Form to ReliaStar on November 27, 2012, it accepted ReliaStar's offer.

(Defendant's Response to Plaintiff's Third Set of Interrogatories at 2; Docket entry 57-8). VCM argues that it was prejudiced by the March 5, 2015 disclosure of a "new" defense, because that left it too little time in discovery (which closed April 30, 2015) to understand ReliaStar's "new" defense.

The Court cannot agree that VCM has been prejudiced. When ReliaStar filed its answer and affirmative defense to VCM's complaint, ReliaStar outlined the very facts that support what VCM now calls a "new" defense. ReliaStar explicitly alleged, as part of its affirmative defense, that after it received a call asking about reducing the face value of the policy, "[o]n October 23, 2012, ReliaStar sent a face decrease quote to Vestor, reflecting the new premium amounts which would be applicable to the face decreases requested by Vestor and advising that, 'if you wish to decrease the face amount of the policy, the attached Policy Service Request Form can be completed' and either mailed or faxed to ReliaStar." (ReliaStar's Answer and Affirmative Defenses at 8). Because those facts were included in ReliaStar's Answer and Affirmative Defenses to plaintiff's complaint, plaintiff could not have been prejudiced when ReliaStar relied on those facts a year later. Plaintiff had the entirely of the discovery period to investigate. Absent prejudice, the Court will not invoke the mend-the-hold doctrine. *Ryerson*, 676 F.3d at 614.

## III. **Conclusion**

For the reasons set forth above, the Court denies plaintiff's motion [57] to bar.

ENTER:

George M. Marovich
United States District Judge

DATED: May 12, 2015